Mark, please call the next page. 311-366, Workers' Compensation Comm'n. Council, please. Good morning, Your Honors. Council, good morning. May it please the Court, I'm Joe Needham. I represent Warner Enterprise in this appeal. We maintain the Commission erred when it reversed the arbitrator's decision and found that Clayman's spinal condition at the time of trial was causally related to the work injury that caused her to break her arm. The arbitrator does not, Clayman's spinal condition does not relate to her work injury and the Commission erred when it reversed that finding. I know we possess a heavy burden in this appeal, but in this case, it is clearly apparent the conclusion opposite that reached by the Commission on this issue is the only outcome possible based on the evidence. It is clearly apparent the Commission erred when it reversed the arbitrator and found the Commission's lumbar condition related to the work injury. And it bears noting before I go further, nothing about Petitioner's upper extremities is at issue in this appeal, only her lumbar condition. And the Commission's decision provides no explanation how the Clayman's spinal condition can relate to an occurrence of April 2007 when the medical records prove the condition that she brought to trial after July 2009 were not present three months after the Commission. That's where the crux of the error lies. And the Commission reversed the arbitrator by finding Dr. Lorenz more credible than the Clayman's treating doctor and more credible than Respondent Section 12 physician. And the only justification they did so, they gave for finding Dr. Lorenz more credible is that he possessed one MRI report that the other two doctors didn't possess. And it's one that wasn't performed until July 2009, so the other doctors couldn't possess it. And yet Dr. Lorenz knew nothing about the rest of her treatment. Dr. Lorenz possessed only one medical record, that's the MRI that he had performed when he evaluated her in July 2009. Dr. Brady and Dr. Soriano possessed all of the medical records for the roughly two years of treatment that had taken place at the time that they were either treating or evaluating her. Let me just ask you this, and I understand your position. You referred to Dr. Lorenz. Obviously, the Commission bought his opinion. They noted that his opinion was that her condition was in fact related to the April 27th fall, that she had no back problems prior to that fall but had extensive treatment thereafter. So I suppose you could make the argument of the chain of events, you've heard that argument too, that somebody was in good health prior to the fall, then they ended up having problems after that. But wasn't there also some diagnostic testing that showed that there was further problems at those levels, progressive problems? It's actually the diagnostic testing that proves the error of the Commission. It proves the error of Dr. Lorenz because Dr. Lorenz, despite having never seen any of these treatment records before, at the time that he testified, he was shown the 2007 MRI, and he was asked to comment on it. And he said, yeah, those are the same conditions. Same condition in 2007 as in 2009, and that's patently false. That's clearly error because if you compare the conditions, and we have a May of 2007 x-ray. That's about a little month and a half after the occurrence. We have normal vertebral alignment, osteophyte, which is degenerative bone growth, disc space narrowing at L45 and L5S1, which is just disc dehydration over time, and facet arthropathy, which is arthritis. That's consistent with nominal findings, degenerative only, which is shown in the MRI two months later in July of 2007. We have patent neuroformina. There's nothing wrong with the neuroformina. Myobilateral facet degeneration at L45 without disc pathology, minimal narrowing at L5S1, which is disc degeneration. The MRI report finds no disc pathology and specifically states no evidence of acute injury. The only true finding was lipomatosis at L5S1, which was performing some amount of encroachment. And does that support the claimant's position? No, because if you look at the condition she brought to trial, it was completely different. Dr. Soriano testified that those 2007 findings were normal. Dr. Lorenz somewhat agreed to the extent that he conceded that the 2007 MRI showed no sign of trauma. But when you compare that with the condition that Dr. Lorenz is treating her for, supposedly treating her because he only sees her twice, but he's treating her and he recommends a fusion surgery because she has severe spondylosis and spondylolisthesis. Those are the conditions that he wants to treat, which the first one is basically arthritis. And she has severe arthritis two and a half years later. And the spondylolisthesis is disc slippage. And that's consistent with what's found between the X-ray and the MRI for July 16, 2009. It finds disc protrusion at L1-2, which wasn't present on the previous MRI, for amino narrowing at L4-5 and L5S1, instead of patent neuroformin, which is what was found in 2007. Anterior listhesis, which is vertebral misalignment, and the 2007 diagnostics specifically confirm proper vertebral alignment. So by the time we get to trial, Dr. Lorenz is examining her for a condition that he thinks existed in 2007, but didn't based on the diagnostics because in 2009 she has vertebral misalignment, slipping of the disc, four amino narrowing, disc bulging, tearing at two annulus levels, L4-5 and L5S1. Let me see if I can call out the essence of your argument. You're not disputing there was a workplace accident. I think you alluded to that at the outset, correct? Correct. Okay. In the time of the claimant, there's no question that she complained of and did in fact receive treatment for back pain, correct? Well, she started complaining six weeks later. Yes, she complained of some back stiffness, which Dr. Brady diagnosed as back stiffness. So you're saying then that in 2009, back condition was totally distinct from the accident? Correct. Absolutely. And it is borne out not just by the diagnostics that I hashed through just now, which truly shows trauma or pathology in 2009 that didn't exist and was shown not to exist in 2007. And that would be attributable to what? Well, we don't necessarily know. And I don't have to establish what it is as long as I can establish a new condition, which I can. Because according to Dr. Eck, Dr. Eck sees this claimant in April of 2009. And in April 6, 2009, she presents with new and different symptoms of bilateral leg and foot pain present for the previous several weeks, which means we get into the area of March of 2009 and something new and different has happened. We know based on the diagnostics of July of 2009, she has new pathology. We know based on her treatment records with Dr. Eck in April of 2009 that she has new symptoms. She has a new condition with new pain symptoms and a new pathology that didn't exist in July of 2007, exist in July of 2009, and potentially start to surface sometime in March of 2009. Let me ask you this. Did she or did she not receive epidural injections at the L4 level in 2007 and 2008? She did. And that also points us to a distinct condition from what she presents in 2009. Because this claimant returns to work and worked for roughly a year. Let me see if I can make sure I find those dates correctly. Between June 2007 and May of 2008, she returns to work. She performs full work duties. Dr. Lorenz is diagnosing her with a condition that requires complete restriction and claims that she's completely restricted until she has this fusion surgery. She has a condition in 2009 and thereafter with significant pathology, requires treatment of fusion surgery, and requires restriction, complete restriction. She could not have possessed that condition based on the medical, the diagnostic evidence, based on her own complaints, and based on the fact that she returns to work for approximately a year between June 2007 and May of 2008. And that's the period where she had the epidural steroid injections. She had some injections. She returned to work. She was able because she didn't have a fusion. And, by the way, epidural steroid injections cannot be performed to a level that requires fusion surgery. It's what you perform to test for nonoperative conditions that can be treated with pain management, essentially. This claimant had some epidural steroid injections, then goes back to work for a year, has no complaints, at least none that she's registering to her treating physicians. No treatment until she goes back to Dr. Rack in April of 2009 and says, something happened in March of 2009 when my symptoms became new and different. She doesn't say something happens, but something changes in and around March of 2009. That's when she goes back to Dr. Rack with her new and different symptoms. So what we're looking at from the commission is their error by glomming on to Dr. Lorenz's opinion. And Dr. Lorenz's opinion, not only is it disproven by the diagnostic evidence, the objective scientific medical evidence that shows us what's wrong with this woman's spine in 2009 that wasn't wrong with it in 2007, but there's a host of other areas that should lead you to agree that Dr. Lorenz's opinions are the worst of the doctors in this. Whether compared to Dr. Brady, the treating physician, or compared to the IME, Dr. Soriano, because Dr. Lorenz truly doesn't have any basis to render an opinion as to what the claimant's condition was prior to his involvement in July of 2009. He literally didn't possess any of the treatment records. He testified he didn't possess any of the treatment records. And he saw the one record he did see of her treatment for the two and a half years prior to his involvement was the MRI of 2007. Well, so let me ask you sort of a blunt question. Sure. But recognizing that you obviously have no burden, does the record suggest some type of an intervening accident that broke the causal connection? I mean, you seem to be tacitly acknowledging there was a change between 2007 and 2009, but you're saying it's not attributable to the workplace accident, correct? Correct. And in fact, Dr. Soriano, who's the only doctor to address this at all, the only doctor to address what is the source of this claimant's condition after 2009, states that this is the progression of her arthritic condition and of her degenerative spine. For a woman with her body habitus and a woman with her lifestyle, she had significant degeneration of the lumbar spine expected based on her age and her body habitus. She was an obese woman. She carried a lot of weight on her spine. And Dr. Soriano, because Dr. Lorenz doesn't get to this issue because he thinks the two conditions are the same, Dr. Soriano addresses how it is she now has a different condition in 2009, and that is the natural progression of her arthritic state. The workplace accident had aggravated the condition. No. And there's no medical evidence to that effect because Dr. Lorenz doesn't opine on it because he thinks the two conditions are the same. And Dr. Lorenz, the only medical issue on the case, says no, this is not a continuation of her work injury. This is a progression of an underlying degenerative condition and arthritic condition unrelated to her work injury. Not just unrelated, but not affected by. And those opinions, consistent with Dr. Brady, I understand that Ms. Newquist took a stab at Section 12 physicians today. Dr. Brady is not a Section 12 physician. He's a treating doctor. He releases her MMI long before July 2009. Dr. Soriano's findings and opinions are consistent with Dr. Brady's. The only one who disagrees with anybody in this case is Dr. Lorenz, and we know he got that case wrong. We know he didn't have any of her medical records. I submit intentionally didn't have any of her medical records because if either he wanted them or if the claimant wanted him to have them, he'd have them. I've gone over the diagnostics which show the error of his opinion. But Dr. Lorenz confirmed that the July 2007 MRI revealed no trauma, no indication of any injury, but claimed that condition is the same as a condition that now requires fusion surgery. He also found the claimant possessed a condition significant enough that she was restricted until she has her fusion, but can't explain how it was that she didn't require these work restrictions until he got on her case, or at least until April of 2009 when she complains of new and different symptoms. How did she work a full year between April 2007 and May 2009 if she exhibited a condition that required spinal fusion and full restriction? She didn't. And I would submit to you there's curiosity as to why we're even talking about Dr. Lorenz.  The petitioner had to travel some 200 miles to see Dr. Lorenz. Is there no competent neurosurgeon in Iowa? She lives in Iowa. Is there no competent neurosurgeon in Rock Island if she has to come to Illinois? And if she can't find one in Illinois, she can't find one by getting to Rockford? Why travel some 200 miles to get to see Dr. Lorenz? Because Dr. Lorenz, or at least some Illinois physician, is the only physician that she's going to find that her attorneys know well enough that they can refer for a second opinion and have him opine without any of the treatment records. He epitomizes. We don't have time. Thank you. Counsel, please. May it please the Court, Counsel. Jennifer Kieselwetter on behalf of the defendant, Terry Cornwall, here. And I'm here today to obviously ask you to uphold the decision of the Workers' Compensation Commission. Really, this is a classic case of manifest weight of the evidence and medical credibility. The commission's decision is based upon the petitioner's credibility and the medical credibility. Now, Counsel points out the difference in these two MRIs. And what I would point out to you is Counsel makes some medical arguments here, but there's no support for them. Counsel said in the beginning of when he was speaking, well, there are two MRIs and there are all these differences. Other than Dr. Lorenz, which doctor compared the MRIs? None of them. And Counsel admitted that and said, well, the other doctors couldn't because it wasn't done until later in 2009. Well, I don't see any reason Dr. Soriano couldn't have reexamined her after the 2009 MRI. But he didn't. He examined her before the 2009 MRI in 2009. So you're saying that there wasn't any, no doctors opined that the 2009 MRI results were much more severe than those of 2007? Nobody said that? Nobody said that. Now, there's progression on the MRIs, but Dr. Lorenz testifies this is the same condition. I mean, and the suggestion that there's no trauma here, well, this isn't a fractured vertebra. I mean, this is a degenerative condition of the spine. That's true. It's a progressing degenerative condition of the spine, which was asymptomatic and she fell and it aggravated it. And that is the testimony of Dr. Lorenz that the commission adopted. This is a case basically you're saying that recovery doesn't have to be the sole cause, the principal cause, as long as it aggravates or accelerates? Correct. Is that the theory of recovering before the arbitrary? Yes, it was. I mean, I don't think there's any doubt here that the conditions she has at L4, L5, and L5-S1 are degenerative conditions. In other words, let's know. Well, if they were degenerative and they weren't aggravated by the workplace accident, you wouldn't recover. I mean, if it's a natural progression, unconnected, as you know, to the workplace accident, you don't recover. Right. And then here we have a condition that is connected to the workplace accident, according to the evidence. And that is what the commission adopted here. The 2007, well, first of all, the 2007 and 2009 MRIs don't show different conditions. The 2007 MRI had findings at L4, L5, and L5-S1, just like the MRI in 2009. But Lorenz did not review the 2007 MRI, did he? He did. Lorenz reviewed both MRIs. He just didn't have all of the medical records showing her injections and her therapy. He was aware of them, but he didn't have every visit. But he was aware of her treatment, and he is the only doctor who actually reviewed both MRIs. He did? He did. Didn't he say in his deposition they were, quote, pretty much the same, and, quote, very similar? Yes. Dr. Lorenz felt that they both showed the same type of condition at L4, L5, L5-S1. So there wasn't this quantum difference between 2009 and 2007 that counsel's alluding to? I don't think there's any evidence that there was this quantum difference in the record. There's nothing to support that argument other than counsel substituting himself as a medical expert, saying, look at these, they're different. Lorenz is saying, no, they're really not. We have a degenerative condition here, L4, L5, L5-S1. And that is what the commission adopted. I mean, they found them to be credible. Soriano, look at the MRIs? Soriano looked at the 2007 MRI. There's no evidence he looked at the 2009 MRI. He did examine her in 2009 and suggested she had some type of different condition. But, again, there's no evidence of an intervening accident. And we're talking about changes at L4, L5, and L5-S1 for which she's been undergoing treatment since 2007. So there's significant support for the commission decision here. And any suggestion that there's some type of intervening accident, there's no evidence of it. And so I think this is a basic case of medical credibility where there's support for the commission decision, through the medical records, through the diagnostics, and through Dr. Lorenz's testimony. So I would ask you to affirm the commission. Thank you. Lorenz did review both MRIs. But he didn't review the 2007 MRI until he was sitting for testimony, until he had already issued his reports, until he had already found that the claimant needed the treatment, which I don't dispute that she probably needs the treatment. But it's for a condition that didn't exist and wasn't caused by the 2007 injury. And we know that because the condition wasn't present in July 2007, three months after. If it was going to set in, it was set in within three months. But Dr. Lorenz reviewed the MRI only because it was shown to him during testimony, because it was brought out by myself, that his knowledge was completely deficient, because prior to that point he had never seen so much as a single one of her treatment records, which he conceded. Now, regarding the end, Dr. Soriano did address the relevancy of the 2009 MRI. He didn't have the opportunity to see it when he provided his opinions. But he did testify to it. And what he said about it is that an MRI in July of 2009 would be irrelevant for diagnosing a condition stemming from an April 2007 injury when you have a July of 2007 MRI. What good does it do us to look at an MRI from two and a half years later when we can see what her condition was three months after the injury? That was Soriano's point, is I don't need to see it to know that it's irrelevant when I have the MRI that shows what was wrong with her three months after the injury. Because Soriano's focus is causal connection, and Lorenz's focus is just treatment. Soriano doesn't say she doesn't need the treatment. He simply says whatever was revealed in a July of 2009 MRI is irrelevant concerning what cause was received from an injury in April of 2007 when we have the diagnostics in 2007. And regarding a medical opinion as to the differences, you don't need a medical opinion. The documents speak for themselves. They say anterior listhesis in 2009, and they didn't say it in 2007. They say disc, the discogram says annular tears, and there's no evidence of that in the 2007 MRIs. 2009 MRI shows disc bulging, disc herniation depending on whose terminology you use. And none of that was present in 2007 when the MRI specifically indicates no acute injury. Dr. Lorenz reviewed one piece of prior treatment record. That's the MRI of 2007, and he only did so because he was asked to do so during testimony. It had no bearing on the opinions that he had rendered prior to that point. And that's where I was headed by saying that Dr. Lorenz is the least informed as to what condition she received in April of 2007. I stand before you today. If you see me tomorrow with a debilitating back condition, you'll know it wasn't caused yesterday because I stand before you today without the condition. We don't know what may happen to you in the next 24 hours. I'm sorry? We wouldn't know what happened to you in the next 24 hours, would we? Correct, but if you saw me tomorrow and I was debilitated, you'd know that it must have happened in the next 24 hours from now and not yesterday. That's Klayman's case. April of 2007, she breaks her arm. July of 2007, May and July of 2007, they run diagnostics which show no injury. We don't know what happens to her, but in April or March or April of 2009, new and different symptoms, new pathology shown in July of 2009. It is impossible. It is clearly apparent that the opposite conclusion must be the case. Thank you. Of course, we'll take the matter under advisement.